MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
BERTIN DOMINGUEZ, ISRAEL ACOLTZI,
JOSE ALEJANDRO MOLINA LUNA, LUIS
GONZALO CARCHI, and RUBEN
CEGUEDA, *individually and on behalf of*
*others similarly situated,*

                                    *Plaintiffs*,

                -against-

NEW YORK BAGELS EATERY INC.
(D/B/A NY BAGELS & CAFE), NYU
BAGELS & CAFE, INC.  (D/B/A NY
BAGELS & CAFE), CHON, JOO S, and
PYONG, SU SON,

                                    *Defendants.*
-------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

        Plaintiffs Bertin Dominguez, Israel Acoltzi, Jose Alejandro Molina Luna, Luis Gonzalo

Carchi, and Ruben Cegueda , individually and on behalf of others similarly situated (collectively,

"Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their

knowledge and belief, and as against New York Bagels Eatery Inc. (d/b/a NY Bagels & Cafe),

NYU Bagels & Cafe, Inc. (d/b/a NY Bagels & Cafe), ("Defendant Corporations"), Chon, Joo S

and  Pyong, Su Son, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

## NATURE OF ACTION

1.      Plaintiffs are former employees of Defendants New York Bagels Eatery Inc. (d/b/a NY Bagels & Cafe), NYU Bagels & Cafe, Inc. (d/b/a NY Bagels & Cafe), Chon, Joo S, and Pyong, Su Son.

2.       Defendants own, operate, or control a bagel shop, located at 587 1st Ave, New York, NY 10016 under the name "NY Bagels & Cafe."

3.      Upon information and belief, individual Defendants Chon, Joo S and Pyong, Su Son, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the deli as a joint or unified enterprise.

4.      Plaintiffs were employed as a cook, delivery workers, bagel maker, food preparer, and grill worker at the deli located at 587 1st Ave, New York, NY 10016.

5.      Plaintiffs Dominguez and Acoltzi were ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to attending the counter, making cream cheese bagels, refilling the sodas, refilling the chips, refilling the ice station, cleaning the bathrooms, organizing and restocking the deliveries, taking out the trash, washing containers and mopping and sweeping  (hereafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime, and spread of hours compensation for the hours that they worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

9.      Furthermore, Defendants repeatedly failed to pay Plaintiffs wages on a timely basis.

10.      Defendants employed and accounted for Plaintiffs Dominguez and Acoltzi as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

11.      However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because these Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

12.      Upon information and belief, Defendants employed the policy and practice of disguising these Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying these Plaintiffs at the minimum wage rate and enabled them to pay them above the tip-credit rate, but below the minimum wage.

13.      In addition, Defendants maintained a policy and practice of unlawfully appropriating these Plaintiffs' and other tipped employees' tips and made unlawful deductions from these Plaintiffs' and other tipped employees' wages.

14.      Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

15.      At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

16.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

17.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

19.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a bagel shop located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

20.     Plaintiff Bertin Dominguez ("Plaintiff Dominguez" or "Mr. Dominguez") is an adult individual residing in Bronx County, New York.

21.     Plaintiff Dominguez was employed by Defendants at NY Bagels & Cafe from approximately April 2014 until on or about September 14, 2020.

22.     Plaintiff Israel Acoltzi ("Plaintiff Acoltzi" or "Mr. Acoltzi") is an adult individual residing in Bronx County, New York.

23.     Plaintiff Acoltzi was employed by Defendants at NY Bagels & Cafe from approximately 2007 until on or about September 15, 2020.

24.     Plaintiff Jose Alejandro Molina Luna ("Plaintiff Molina" or "Mr. Molina") is an adult individual residing in Queens County, New York.

25.     Plaintiff Molina was employed by Defendants at NY Bagels & Cafe from approximately November 2008 until on or about December 2019.

26.     Plaintiff Luis Gonzalo Carchi ("Plaintiff Gonzalo" or "Mr. Gonzalo") is an adult individual residing in Queens County, New York.

27.     Plaintiff Gonzalo was employed by Defendants at NY Bagels & Cafe from approximately October 2014 until on or about September 11, 2020.

28.     Plaintiff Ruben Cegueda ("Plaintiff Cegueda" or "Mr. Cegueda") is an adult individual residing in Queens County, New York.

29.     Plaintiff Cegueda was employed by Defendants at NY Bagels & Cafe from approximately February 2010 until on or about September 4, 2020.

*Defendants*

30.     At all relevant times, Defendants owned, operated, or controlled a bagel shop, located at 587 1st Ave, New York, NY 10016 under the name "NY Bagels & Cafe."

31.     Upon information and belief, New York Bagels Eatery Inc. (d/b/a NY Bagels & Cafe) is a domestic corporation organized and existing under the laws of the State of New York. Upon

information and belief, it maintains its principal place of business at 587 1st Ave, New York, NY 10016.

32.     Upon information and belief, NYU Bagels & Cafe, Inc. (d/b/a NY Bagels & Cafe) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 587 1st Ave, New York, NY 10016.

33.     Defendant Chon, Joo S is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Chon, Joo S is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Chon, Joo S possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

34.     Defendant Pyong, Su Son is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Pyong, Su Son is sued individually in his capacity as owner, officer and/or agent of Defendant Corporations. Defendant Pyong, Su Son possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

35.     Defendants operate a bagel shop located in the Midtown East section of Manhattan in New York City.

36.     Individual Defendants, Chon, Joo S and Pyong, Su Son, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, and control significant functions of Defendant Corporations.

37.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

38.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

39.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

40.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

41.     Upon information and belief, Individual Defendants Chon, Joo S and Pyong, Su Son operate Defendant Corporations as either alter egos of themselves and/or fail to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

   a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

b) defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c) transferring assets and debts freely as between all Defendants,

d) operating Defendant Corporations for their own benefit as the sole or majority shareholders,

e) operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed Corporations,

f) intermingling assets and debts of their own with Defendant Corporations,

g) diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

42.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

43.     In each year from 2014 to 2020, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

44.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the deli on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

45.    Plaintiffs are former employees of Defendants who were employed as a cook, grill worker, bagel maker, food preparer, and ostensiblyas delivery workers. However, the delivery workers spent over 20% of each shift performing the non-tipped duties described above.

46.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Bertin Dominguez*

47.    Plaintiff Dominguez was employed by Defendants from approximately April 2014 until on or about September 14, 2020.

48.    Defendants employed Plaintiff Dominguez as a  bagel maker and ostensibly as a delivery worker.

49.    However, Plaintiff Dominguez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

50.    Although Plaintiff Dominguez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

51.    Plaintiff Dominguez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

52.    Plaintiff Dominguez's work duties required neither discretion nor independent judgment.

53.    From approximately October 2014 until on or about December 2014, Plaintiff Dominguez worked as a delivery worker from approximately 8:00 a.m. until on or about 6:00 p.m., 6 days a week (typically 60 hours per week).

54.     From approximately January 2015 until on or about December 2015, Plaintiff Dominguez worked as a delivery worker from approximately 7:00 a.m. until on or about 5:00 p.m., 6 days a week (typically 60 hours per week).

55.     From approximately January 2016 until on or about December 2017, Plaintiff Dominguez worked as a delivery worker from approximately 6:00 a.m. until on or about 4:00 p.m. to 5:00 p.m., 6 days a week (typically 60 to 66 hours per week).

56.     From approximately January 2018 until on or about February 2020, Plaintiff Dominguez worked as a delivery worker from approximately 6:00 a.m. until on or about 4:00 p.m. to 5:00 p.m., 5 days a week and from approximately 6:00 a.m. until on or about 9:00 p.m., on Thursdays (typically 70 hours per week).

57.     From approximately March 2020 until on or about March 2020, Plaintiff Dominguez worked as a bagel maker from approximately 6:00 a.m. until on or about 4:00 p.m., Tuesdays through Fridays, from approximately 6:00 a.m. until on or about 2:00 p.m., on Saturdays, and from approximately 6:00 a.m. until on or about 3:00 p.m., on Sundays (typically 57 hours per week).

58.     From approximately April 13, 2020 until on or about April 30, 2020, Plaintiff Dominguez worked as a bagel maker from approximately 6:00 a.m. until on or about 1:00 p.m., Mondays through Fridays (typically 35 hours per week).

59.     From approximately May 2020 until on or about September 14, 2020, Plaintiff Dominguez worked as a bagel maker from approximately 6:00 a.m. until on or about 2:00 p.m., Mondays through Fridays (typically 40 hours per week).

60.     Throughout his employment, Defendants paid Plaintiff Dominguez his wages in cash.

61.     From approximately October 2014 until on or about December 2014, Defendants paid Plaintiff Dominguez a fixed salary of $450 per week.

62.     From approximately January 2015 until on or about December 2015, Defendants paid Plaintiff Dominguez a fixed salary of $510 per week.

63.     From approximately January 2016 until on or about 2018, Defendants paid Plaintiff Dominguez a fixed salary of $550 per week.

64.     From approximately 2018 until on or about March 2020, Defendants paid Plaintiff Dominguez a fixed salary of $610 per week.

65.     From approximately April 13, 2020 until on or about April 2020, Defendants paid Plaintiff Dominguez a fixed salary of $420 per week.

66.     From approximately May 2020 until on or about September 14, 2020, Defendants paid Plaintiff Dominguez a fixed salary of $480 per week.

67.     Plaintiff Dominguez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

68.     For example, Defendants required Plaintiff Dominguez to continue working an additional 1 hour to 3 hours past his scheduled departure time one day per week, and did not pay him for the additional time he worked.

69.     Plaintiff Dominguez was never notified by Defendants that his tips were being included as an offset for wages.

70.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Dominguez's wages.

71.     Defendants withheld a portion of Plaintiff Dominguez's tips; specifically, Defendants withheld a portion of the jar tips customers left for Plaintiff Dominguez and other coworkers.

72.     Plaintiff Dominguez was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

73.     In addition, in order to get paid, Plaintiff Dominguez was required to sign a document in which Defendants misrepresented the hours that he worked per week.

74.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Dominguez regarding overtime and wages under the FLSA and NYLL.

75.     Defendants did not provide Plaintiff Dominguez an accurate statement of wages, as required by NYLL 195(3).

76.     Defendants did not give any notice to Plaintiff Dominguez, in English and in Spanish (Plaintiff Dominguez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Israel Acoltzi*

77.     Plaintiff Acoltzi was employed by Defendants from approximately 2007 until on or about September 15, 2020.

78.     Defendants employed Plaintiff Acoltzi as a food preparer and ostensibly as  a delivery worker.

79.     However, Plaintiff Acoltzi was also required to spend a significant portion of his work day performing the non-tipped duties described above.

80.     Although Plaintiff Acoltzi ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

81.     Plaintiff Acoltzi regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

82.     Plaintiff Acoltzi's work duties required neither discretion nor independent judgment.

83.     Throughout his employment with Defendants, Plaintiff Acoltzi regularly worked in excess of 40 hours per week.

84.     From approximately October 2014 until on or about January 2020, Plaintiff Acoltzi worked from approximately 5:30 a.m. until on or about 3:00 p.m., 6 days a week (typically 57 hours per week).

85.     From approximately January 2020 until on or about September 15, 2020, Plaintiff Acoltzi worked from approximately 6:00 a.m. until on or about 2:00 p.m., 6 days a week (typically 48 hours per week).

86.     Throughout his employment, Defendants paid Plaintiff Acoltzi his wages in cash.

87.     From approximately October 2014 until on or about 2015, Defendants paid Plaintiff Acoltzi $13.00 per hour.

88.     From approximately 2015 until on or about March 2020, Defendants paid Plaintiff Acoltzi $14.00 per hour.

89.     From approximately March 2020 until on or about September 15, 2020, Defendants paid Plaintiff Acoltzi $12.00 per hour.

90.     Plaintiff Acoltzi was never notified by Defendants that his tips were being included as an offset for wages.

91.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Acoltzi's wages.

92.     Plaintiff Acoltzi was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

93.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Acoltzi regarding overtime and wages under the FLSA and NYLL.

94.     Defendants did not provide Plaintiff Acoltzi an accurate statement of wages, as required by NYLL 195(3).

95.     Defendants did not give any notice to Plaintiff Acoltzi, in English and in Spanish (Plaintiff Acoltzi's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Jose Alejandro Molina Luna*

96.     Plaintiff Molina was employed by Defendants from approximately November 2008 until on or about December 2019.

97.     Defendants employed Plaintiff Molina as a cook.

98.     Plaintiff Molina regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

99.     Plaintiff Molina's work duties required neither discretion nor independent judgment.

100.     Throughout his employment with Defendants, Plaintiff Molina regularly worked in excess of 40 hours per week.

101.     From approximately October 2014 until on or about December 2019, Plaintiff Molina worked from approximately 4:00 a.m. until on or about 2:00 p.m., Monday through Saturday (typically 60 hours per week).

102.     Throughout his employment, Defendants paid Plaintiff Molina his wages in cash.

103.     From approximately October 2014 until on or about December 2014, Defendants paid Plaintiff Molina a fixed salary of $800 per week.

104.     From approximately December 2014 until on or about December 2016, Defendants paid Plaintiff Molina a fixed salary of $850 per week.

105.     From approximately December 2016 until on or about December 2019, Defendants paid Plaintiff Molina a fixed salary of $1,000 per week.

106.     Plaintiff Molina was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

107.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Molina regarding overtime and wages under the FLSA and NYLL.

108.     Defendants did not provide Plaintiff Molina an accurate statement of wages, as required by NYLL 195(3).

109.     Defendants did not give any notice to Plaintiff Molina, in English and in Spanish (Plaintiff Molina's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

110.     Defendants required Plaintiff Molina to purchase "tools of the trade" with his own funds—including three shirts.

*Plaintiff Luis Gonzalo Carchi*

111.     Plaintiff Gonzalo was employed by Defendants from approximately October 2014 until on or about September 11, 2020.

112.     Defendants employed Plaintiff Gonzalo as a cook.

113.     Plaintiff Gonzalo regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

114.    Plaintiff Gonzalo's work duties required neither discretion nor independent judgment.

115.    Throughout his employment with Defendants, Plaintiff Gonzalo regularly worked in excess of 40 hours per week.

116.    From approximately October 2014 until on or about December 31, 2018, Plaintiff Gonzalo worked from approximately 5:30 a.m. until on or about 3:00 p.m., 6 days a week (typically 57 hours per week).

117.    From approximately January 1, 2019 until on or about March 15, 2020, Plaintiff Gonzalo worked from approximately 5:30 a.m. until on or about 2:30 p.m., 6 days a week (typically 54 hours per week).

118.    From approximately March 16, 2020 until on or about June 30, 2020, Plaintiff Gonzalo worked from approximately 5:30 a.m. until on or about 12:00 p.m., Mondays through Fridays (typically 32.5 hours per week).

119.    From approximately July 1, 2020 until on or about September 11, 2020, Plaintiff Gonzalo worked from approximately 5:30 a.m. until on or about 1:30 p.m., Mondays through Fridays (typically 40 hours per week).

120.    Throughout his employment, Defendants paid Plaintiff Gonzalo his wages in cash.

121.    From approximately 2014 until on or about 2019, Defendants paid Plaintiff Gonzalo a fixed salary of $680 per week.

122.    From approximately 2019 until on or about March 15, 2020, Defendants paid Plaintiff Gonzalo a fixed salary of $780 per week.

123.    From approximately March 16, 2020 until on or about September 11, 2020, Defendants paid Plaintiff Gonzalo $12.00 per hour.

124.    For approximately two weeks, Defendants did not pay Plaintiff Gonzalo any wages for his work.

125.    Plaintiff Gonzalo was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

126.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Gonzalo regarding overtime and wages under the FLSA and NYLL.

127.    Defendants did not provide Plaintiff Gonzalo an accurate statement of wages, as required by NYLL 195(3).

128.    Defendants did not give any notice to Plaintiff Gonzalo, in English and in Spanish (Plaintiff Gonzalo's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

129.    Defendants required Plaintiff Gonzalo to purchase "tools of the trade" with his own funds—including two shirts and one knife.

*Plaintiff Ruben Cegueda*

130.    Plaintiff Cegueda was employed by Defendants from approximately February 2010 until on or about September 4, 2020.

131.    Defendants employed Plaintiff Cegueda as a grill worker.

132.    Plaintiff Cegueda regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

133.    Plaintiff Cegueda's work duties required neither discretion nor independent judgment.

134.    Throughout his employment with Defendants, Plaintiff Cegueda regularly worked in excess of 40 hours per week.

135.    From approximately October 2014 until on or about March 2020, Plaintiff Cegueda worked from approximately 11:00 a.m. until on or about 9:00 p.m., 6 days a week (typically 60 hours per week).

136.    From approximately March 2020 until on or about September 4, 2020, Plaintiff Cegueda worked from approximately 8:00 a.m. until on or about 12:00 p.m. to 2:00 p.m. to 4:00 p.m. to 7:00 p.m., Mondays through Fridays (typically 20 to 55 hours per week).

137.    Throughout his employment, Defendants paid Plaintiff Cegueda his wages in cash.

138.    From approximately 2014 until on or about 2016, Defendants paid Plaintiff Cegueda $13.50 per hour.

139.    From approximately 2017 until on or about December 2017, Defendants paid Plaintiff Cegueda $14.50 per hour.

140.    From approximately 2018 until on or about March 2020, Defendants paid Plaintiff Cegueda $15.00 per hour.

141.    From approximately March 2020 until on or about September 4, 2020, Defendants paid Plaintiff Cegueda a fixed salary of $1,000.00 per week.

142.    Defendants never granted Plaintiff Cegueda any breaks or meal periods of any kind.

143.    Plaintiff Cegueda was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

144.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Cegueda regarding overtime and wages under the FLSA and NYLL.

145.    Defendants did not provide Plaintiff Cegueda an accurate statement of wages, as required by NYLL 195(3).

146.    Defendants did not give any notice to Plaintiff Cegueda, in English and in Spanish (Plaintiff Cegueda's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Defendants' General Employment Practices*

147.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay, and overtime compensation as required by federal and state laws.

148.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

149.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

150.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

151.    Defendants required Plaintiffs Dominguez and Acoltzi and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

152.    These Plaintiffs and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

153.     These Plaintiffs' duties were not incidental to their occupation as tipped workers , but instead constituted entirely unrelated general deli work with duties, including the non-tipped duties described above.

154.     These Plaintiffs and all other tipped workers were paid at a rate that was below minimum wage by Defendants.

155.     However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and these Plaintiffs' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

156.     New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

157.     In violation of federal and state law as codified above, Defendants classified these Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was below minimum wage when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

158.     Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

159.     Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

160.     Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received.

161.     As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs who received tips, by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

162.     Defendants unlawfully misappropriated charges purported to be gratuities received by tipped Plaintiffs, and other tipped employees, in violation of New York Labor Law § 196-d (2007).

163.     Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive or forgo the tip credit and pay them the full hourly minimum wage.

164.     Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

165.     Defendants required Plaintiffs to sign a document that reflected inaccurate or false hours worked.

166.     Defendants paid Plaintiffs their wages in cash.

167.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

168.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

169.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

170.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

171.     Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

172.     Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

173.     Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

174.     At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

175.     The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

176.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

177.     At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

178.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

179.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

180.    Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

181.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

182.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

183.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

184.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

185.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

186.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

187.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

188.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs,

controlled the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

189.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

190.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

191.    Plaintiffs were damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE OVERTIME PROVISIONS**

**OF THE NEW YORK STATE LABOR LAW**

192.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

193.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

194.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

195.    Plaintiffs were damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF THE SPREAD OF HOURS WAGE ORDER**

**OF THE NEW YORK COMMISSIONER OF LABOR**

196.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

197.     Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

198.     Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

199.     Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

200.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

201.     Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

202.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF THE WAGE STATEMENT PROVISIONS

### OF THE NEW YORK LABOR LAW

203.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

204.     With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

205.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

206.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

207.     Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

208.     Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM TIPS IN VIOLATION

## OF THE NEW YORK LABOR LAW

209.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

210.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

211.     New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

212.     Defendants unlawfully misappropriated a portion of Plaintiffs' tips that were received from customers.

213.     Defendants knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

Plaintiffs were damaged in an amount to be determined at trial.

## TENTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION

## OF THE NEW YORK LABOR LAW

214.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

215.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

216.     Defendants made unlawful deductions from Plaintiffs' wages including, but not limited to, deductions for meals they never ate.

217.     The deductions made from Plaintiffs' wages were not authorized or required by law.

218.     Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

Plaintiffs were damaged in an amount to be determined at trial.

## ELEVENTH CAUSE OF ACTION

## VIOLATION OF THE TIMELY PAYMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

219. Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

220. Defendants did not pay Plaintiffs on a regular weekly basis, in violation of NYLL §191.

221. Defendants are liable to each Plaintiff in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a) Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b) Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c) Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d) Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e) Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations as to Plaintiffs;

(k)     Declaring that Defendants violated the timely payment provisions of the NYLL as to Plaintiffs;

(l)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(m)     Declaring that Defendants' violations of the provisions of the NYLL and spread of hours wage order were willful as to Plaintiffs;

(n)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable

(o)      Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)      Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, overtime compensation, and spread of hours pay shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)      Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(r)       Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(s)      Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)      All such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

 Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated:  New York, New York

November 10, 2020

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:      _____/s/ Michael Faillace_____
Michael Faillace [MF-8436]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620

*Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

September 4, 2020

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:            Ruben Cegueda

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:            4 de septiembre de 2020

_Certified as a minority-owned business in the State of New York_

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 4, 2020

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:            Luis Gonzalo Carchi

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:         4 de Septiembre 2020

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

**Employment and Litigation Attorneys**

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 4, 2020

BY ELECTRONIC SIGNATURE

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                           Israel Acoltzi

Legal Representative / Abogado:          Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                            4 de Septiembre de 2020

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

September 4, 2020

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                      Bertin Dominguez

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                       4 de septiembre 2020

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

November 3, 2020

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                   Jose Alejandro Molina Luna

Legal Representative / Abogado:   Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                    3 de noviembre de 2

*Certified as a minority-owned business in the State of New York*